# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 1:20-cv-03668-MSK

CITIZENS FOR CONSTITUTIONAL INTEGRITY,
and
SOUTHWEST ADVOCATES, INC.,

 Plaintiff(s),

v.

THE UNITED STATES OF AMERICA,
THE OFFICE OF SURFACE MINING RECLAMATION AND ENFORCEMENT,
SCOTT DE LA VEGA, Department of the Interior Secretary, in his official capacity,
GLENDA OWENS, Acting Director of the Office of Surface Mining Reclamation and Enforcement, in her official capacity, and
LAURA DANIEL-DAVIS, Acting Assistant Secretary for Land and Minerals Management, in her official capacity,

 Defendant(s),

v.

GCC Energy, LLC,

 Interested Party.

---

## DEFENDANT-INTERVENOR GCC ENERGY, LLC'S
## MOTION TO INTERVENE

---

Pursuant to Rules 24(a) and (b) of the Federal Rules of Civil Procedure ("FRCP"), Proposed Defendant-In-Intervention GCC Energy, LLC ("GCC") hereby moves the Court for leave to intervene in this action as a Defendant. Pursuant to FRCP 24(c), GCC's Proposed Motion to Dismiss is filed simultaneously herewith. GCC seeks intervention in this action to protect its federal mining permit and lease for the King II Mine, a mine that has operated in La

Plata County, Colorado for nearly 80 years and which currently employs over 100 mine workers in the County.

GCC further requests expedited consideration of its Motion to Intervene to allow it the opportunity to respond to Plaintiffs' Motion for Summary Judgment and Statement of Undisputed Facts, which must be filed by March 23, 2021. GCC is also concerned that the Plaintiffs have indicated an intent to seek temporary emergency relief to stop GCC from building a "low cover crossing", and GCC needs to be granted party status to respond to any such request for relief or any other type of relief the Plaintiffs intend to seek.

For the reasons set forth below, GCC's motion to intervene should be granted.

## I.     FACTUAL BACKGROUND

GCC operates the King II Mine, an underground coal mine located in La Plata County in southwestern Colorado approximately 6 miles southwest of Hesperus, Colorado and approximately 14 miles west of Durango, Colorado. The coal from the King II Mine is primarily used as an energy source for GCC-owned cement plants located in Colorado, New Mexico, Texas, and Chihuahua, Mexico. The first iteration of the mine, called the King I Mine, operated in La Plata County since 1941 approximately 2 miles southeast of the current King II Mine. Mining operations at King II began in 2007, and operations at King I were ceased two years later in 2009.

The subsurface operations at the Mine are subject to a federal coal lease COC-62920 (the "King II Mine Lease") and Federal Permit CO-0106C (the "King II Mine Permit"). The Office of Surface Mining, Reclamation and Enforcement ("OSMRE") is the regulatory authority that administers the King II Mine Permit under the federal Surface Mining and Reclamation Act

("SMCRA"), and the Bureau of Land Management ("BLM") administers the King II Mine Lease under the Federal Land Protection and Mining Act ("FLPMA") and SMRCRA.[1]

At issue in this litigation are two federal approvals allowing the expansion of operations at the King II Mine. GCC submitted an application to BLM on January 1, 2011 requesting a modification of the King II Mine Lease to add approximately 950 acres to the Lease. GCC simultaneously requested a modification to the King II Mine Permit from OSMRE. The purpose of the lease and permit modification requests were to authorize additional extraction of underground coal reserves in tracts immediately adjacent to the existing King II Mine and extend the life of the King II Mine.

BLM and OSMRE cooperated in preparing an environmental assessment ("EA") of the requested King II modification in accordance with the National Environmental Policy Act ("NEPA"). The purpose of the EA was to evaluate potential environmental effects that may be associated with the proposed modification in conjunction with the resulting expanded development and mine operations. The NEPA review process included numerous water-related studies, including hydrogeological assessments, drilling of numerous monitoring wells, assessment of surface and groundwater impacts, and assessment of any potential impact on neighboring water supply wells. Plaintiff Southwest Advocates and its members participated by submitting comments on the NEPA review for the King II Mine Lease and Permit modification, as well as participating in various State and La Plata County proceedings and engaging frequently with GCC about the King II Mine. The NEPA analysis was completed in September

---

[1] All surface facilities and disturbance for the King II Mine are located on State-owned land. These surface operations are authorized pursuant to State of Colorado lease COC-62920 and have been permitted under Colorado Division of Reclamation, Mining and Safety permit number #C-1981-035. The State lease and permit are not at issue in this litigation.

2017 with a project Finding of No Significant Impact ("FONSI"). As a result, the requested modification of the King II Mine Lease and King II Mine Permit was approved by the federal Defendants on December 15, 2017 (the "2017 Mine Modification").[2]

The Plaintiffs' lawsuit seeks to stay the 2017 Mine Modification and ultimately withdraw the Modification entirely. This will effectively shut down future Mine operations and result in the loss of jobs for approximately 100 GCC employees at the Mine. Additionally, according to the Joint Case Management Plan ("CMP") filed by the Plaintiffs and Federal Defendants on February 18, 2021, Plaintiffs intend to file a "motion for emergency relief" or other "temporary relief" under SMCRA to prevent the construction of what is called "the low cover crossing" which provides access to expanded mining areas.[3] *See* CMP (docket # 8), p. 8. As such, the potential impacts on GCC's mining operations at the King II Mine presented by Plaintiffs' lawsuit are significant.

## II.   ARGUMENT

The Tenth Circuit "has historically taken a liberal approach to intervention and thus favors the granting of motions to intervene." *Kane Cty. v. United States*, 928 F.3d 877, 890 (10th Cir. 2019). *See also Utahns for Better Transp. v. U.S. Dept. of Transp.*, 295 F.3d 1111, 1115 (10th Cir. 2002) ("[o]ur court has tended to follow a somewhat liberal line in allowing intervention"). As set forth below, GCC has a protectable interest in the 2017 Mine Modification

---

[2] Although not directly relevant to Plaintiff's allegations in this action, in 2018, GCC submitted a second request to modify the King II Mine Lease and King II Mine Permit to further expand the acreage GCC is permitted to mine at King II (the "Second Mine Modification Request"). The Second Mine Modification Request was also subject to a fulsome environmental impact review under NEPA, with the same finding of no significant impact as the NEPA review conducted for the 2017 Mine Modification. Plaintiffs Southwest Advocates and its members also participated in this NEPA review process.

[3] Although a motion for injunctive relief is not yet before the Court, Plaintiffs would not be entitled to injunctive relief of any kind because they would not be able to establish, among other elements for injunctive relief, a likelihood of success on the merits of their Complaint for the reasons set forth in GCC's Motion to Dismiss filed herewith.

4

directly at issue in this litigation that could be significantly impacted by the disposition of the case, and its interests as a private party are not entirely aligned with those of the Federal Defendants. There would be no prejudice to the Plaintiffs at this early stage in the case by allowing GCC to defend its interests in the challenged Mine Modification.

Thus, intervention by GCC in this litigation as a matter of right is warranted. Alternatively, GCC respectfully submits that intervention is well within the Court's discretion under Rule 24(b), and requests that the Court exercise its discretion to permit intervention by GCC.

### A. GCC Should Be Permitted to Intervene in This Action as a Matter of Right.

Pursuant to FRCP 24(a), "a nonparty seeking to intervene as of right must establish: (1) timeliness, (2) an interest relating to the property or transaction that is the subject of the action, (3) the potential impairment of that interest, and (4) inadequate representation by existing parties." *Kane Cty. v. United States*, 928 F.3d 877, 889 (10th Cir. 2019). *See also* Utahns for Better Transp. v. United States DOT, 295 F.3d 1111, 1115 (10th Cir. 2002); Fed. R. Civ. P. 24(a)(2). As detailed below, GCC satisfies this four-part test.

#### 1. GCC'S Motion to Intervene is Timely.

This litigation is in its infancy, as the federal Defendants' initial responsive pleading and all dispositive motions are just now being filed by March 10, 2021. *See* Order dated February 24, 2021 [ECF # 23]. As such, GCC's request to intervene is timely, and the Plaintiffs have no basis on which to claim cognizable prejudice from permitting GCC to intervene at the outset of this case. *See Utah Ass'n of Counties v. Clinton*, 255 F.3d 1246, 1250 (finding that the district court abused its discretion in finding intervention untimely in light of "the relatively early stage of the litigation and the lack of prejudice to plaintiffs flowing from the length of time between

the initiation of the proceedings and the motion to intervene"); *Sanguine, Ltd. v. United States Dep't of Interior*, 736 F.2d 1416, 1418 (10th Cir. 1984) ("The timeliness of a motion to intervene is assessed 'in light of all the circumstances, including the length of time since the applicant knew of his interest in the case, prejudice to the existing parties, prejudice to the applicant, and the existence of any unusual circumstances.'").

        2.     *GCC Has a Protectable Interest Relating to the Subject of this Litigation.*

The protectable interest test is "primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." *Utahns for Better Transp.*, 295 F.3d at 1115 (*citing Utah Ass'n*, 255 F.3d at 1251-52; Coalition, 100 F.3d at 841). GCC has a significant protectable interest in this action.

GCC owns the King II Mine and operates the Mine under the King II Mine Lease and Permit, as modified in 2017. The 2017 Mine Modification, which Plaintiffs seek to stay and ultimately withdraw in this lawsuit, allows GCC to continue operations at the King II Mine. Thus, GCC's interest in the federal coal covered by the King II Mine Lease and authorization to extract that coal pursuant to the King II Mine Permit are directly at stake in this matter. As discussed further below, a private parties' interests in federal approvals such as those at issue here are protectable interests justifying intervention. *See e.g., W. Watersheds Project v. U.S. Forest Serv.*, 2015 U.S. Dist. LEXIS 159390 *; 2015 WL 7451169 (10th Cir. 2015) (finding that grazing permit holders had a protectable interest in litigation that sought to rescind grazing approvals in the Copper Basin), *citing Western Watersheds Project v. U.S. Fish and Wildlife Service*, 2011 U.S. Dist. LEXIS 74485, 2011 WL 2690430 (D. Idaho 2011) (granting intervention upon showing that relief might consist of mitigation measures that could have substantial effect on permits held by proposed intervenors).

### 3. GCC'S Interests May Be Significantly Impacted by the Disposition of this Case.

In their prayer for relief in the Complaint, Plaintiffs ask this Court to overturn the 2017 Mine Modification. If the 2017 Mine Modification is overturned, or even stayed during the pendency of the case, GCC's ability to operate the Mine will be adversely impacted, if not entirely curtailed. Most immediately, the prospect of a TRO preventing necessary mine construction activities, as Plaintiffs now intend to file no later than the end of March, presents a significant potential impact to GCC's mine operations. Such impairment of interests justifies GCC's intervention, particularly given the minimal showing required to satisfy this prong of the intervention standard. *See Utahns for Better Transp.*, 295 F.3d at 1115.

In *Utahns for Better Transp.*, the Tenth Circuit held that intervention is appropriate when an action may impair or impede another party's ability to protect its interests. *See Id.* (citing *Natural Res. Def. Council v. United States Nuclear Regulatory Comm'n*, 578 F.2d 7 1341, 1346 (10th Cir. 1978) ("[t]here is some value in having the parties before the court so that they will be bound by the result.")). Indeed, "the question of impairment is not separate from the question of existence of an interest." *Natural Res. Def. Council*, 578 F.2d at 1345. "To satisfy this element of the intervention test, a would-be intervenor must show *only* that impairment of its substantial legal interest is *possible* if intervention is denied. This burden is *minimal*." *Utah Ass'n*, 255 F.3d at 1254 (citations omitted) (emphasis added).

Here, the relief sought by Plaintiffs will significantly impair, and possibly terminate, the ability of GCC to operate the King II Mine. The legal questions at issue in this case directly relate to the interests of GCC and the ongoing operation of the Mine. An adverse decision in this court could significantly harm GCC's very real interests in the Mine. Moreover, GCC has no adequate substitute remedy. If GCC is not permitted to intervene in this case, it has no other

7

forum in which to defend the 2017 Mine Modification.  Fairness requires that GCC be able to defend those interests here.  Therefore, the third prong of the intervention as of right analysis is also satisfied.

    *4.    GCC'S Interests Are Not Adequately Represented by the Federal Defendants.*

GCC's interests are not adequately represented by the Federal Defendants in this case. The United States Supreme Court has held that the requirement of inadequate representation is satisfied if the representation of a named party *may be* inadequate. *See Trbovich v. United Mine Workers*, 404 U.S. 528, 538, n.10 (1972). Similarly, the Tenth Circuit has explicitly noted that the burden of showing that a party's interests are not adequately protected is minimal. *Utahns for Better Transp.*, 295 F.3d at 1117. Consequently, GCC has a very low standard to satisfy in this regard. Indeed, "[t]he possibility that the interests of the applicant and the parties may diverge 'need not be great' in order to satisfy this minimal burden." *Utah Ass'n*, 255 F.3d at 1254.

More particularly, in cases such as this where a private party seeks intervention to protect its interest, and the question is whether the federal government party can adequately defend those private interests, the Tenth Circuit has "repeatedly recognized that it is on its face impossible for a government agency to carry the task of protecting the public's interests and the private interests of a prospective intervenor." *WildEarth Guardians v. Nat'l Park Serv.*, 604 F.3d 1192, 1199 (10th Cir. 2010); *Utahns for Better Transp.,* 295 F.3d at 1115 ("[T]he government's prospective task of protecting not only the interest of the public but also the private interest of the petitioners in intervention is on its face impossible and creates the kind of conflict that satisfies the minimal burden of showing inadequacy of representation." (quotation marks and citation omitted)).  In fact, in a case like this one, involving a rule overturned by Congress pursuant to its authority under the Congressional Review Act, the court granted intervention to several private parties

finding that "it is impossible to assume that [the Department of Interior], which is charged by law with managing public lands on behalf of the entire polity, is instead representing the special and much more focused interests of the prospective interveners." *Center for Biological Diversity v. Zinke*, 2017 U.S. Dist. LEXIS 118899 *7 (D. AK 2017).

If Plaintiffs are successful in obtaining the ultimate requested relief, GCC would be required to cease mining, which in turn would mean terminating employment for the current miners, losing internal coal supply for its cement plant operations and sales to third parties, and complicating GCC's ability to meet State and local permit requirements, potentially leading to the Mine being permanently shuttered. The Federal Defendants in this action are not similarly situated, from a financial, operational, or even a policy perspective. This fact is clearly demonstrated by the Federal Defendants' summary of their position in the case in the parties' Joint Case Management Plan. *See* CMP at p. 5 [ECF No. 18].

In the CMP, they take a very narrow, and in GCC's opinion factually inaccurate, view of the scope of the case, describing the case only as a challenge to the constitutionality of the Congressional Review Act. *See* CMP, at p. 5. They do not acknowledge that the Complaint alleges violations of SMCRA, the federal Administrative Procedures Act, and seek declaratory relief which includes withdrawal of the 2017 Mine Modification. As set forth in its proposed Motion to Dismiss filed simultaneously herewith, GCC makes a separate and distinct argument supporting dismissal of Plaintiffs' Complaint, which focuses instead on the fact that the Federal Defendants had no duty to apply the Stream Protection Rule ("SPR"), as Plaintiffs' claim, to the 2017 Mine Modification because the SPR had been previously withdrawn and invalidated by Congress pursuant to the Congressional Review Act. *See* GCC's Motion to Dismiss at pp. 7-11. Thus, irrespective of the constitutionality of the Congressional Review Act, which is the sole

9

focus of the Federal Defendants' position, this Court can and should dismiss the Plaintiffs' Complaint because the Plaintiffs are asking this Court to impose a nonsensical duty on the Federal Defendants to defy Congress and apply a rule that was no longer a valid requirement at the time they approved the 2017 Mine Modification.

Federal Defendants have not raised this very important grounds for dismissal. And given the narrow posture they have taken to date, it is unclear whether they will even defend the Mine Modification decision itself or seek to oppose Plaintiffs' request to restrain mine operations. As such, Federal Defendants do not adequately represent GCC's interests in this matter.

Because all four elements of the intervention as of right analysis support intervention by GCC, the Court should permit GCC to intervene as a matter of right pursuant to Rule 24(a)(2).

**B.     Permissive Intervention of GCC In This Case Is Also Justified.**

In the event the Court does not permit intervention as a matter of right, GCC submits that permissive intervention pursuant Rule 24(b) is warranted. FRCP 24(b) provides that, "[o]n timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(2). This standard is "permissive" and "a matter within the district court's discretion." *City of Stilwell v. Ozarks Rural Elec. Coop. Corp.*, 79 F.3d 1038, 1043 (10th Cir. 1996) (quoting *Kiamichi R.R. Co., Inc. v. Nat'l Mediation Bd.*, 986 F.2d 1341, 1345 (10th Cir. 1993)).

Virtually all questions of law and fact in this case will be common to the federal Defendants and GCC. While the consequences of the Plaintiffs' requested relief would impact GCC and the federal Defendants differently, and GCC's interests as a private party with a protectable interest in the minerals subject to the King II Mine Lease and operations permitted under the King II Mine Permit, differ from those of the federal Defendants, the case will be

dominated by common elements of law and fact. Accordingly, if the Court denies intervention as a matter of right under FRCP 24(a), GCC respectfully requests that the Court exercise its discretion to permit GCC to intervene in the action as a defendant under FRCP 24(b).

### III.   CONCLUSION

For the reasons stated above, GCC respectfully requests that the Court grant this Motion and permit GCC to intervene as a matter or right pursuant to Rule 24(a) or, in the alternative, grant permissive intervention under Rule 24(b).

### CERTIFICATE OF COMPLIANCE WITH D.C.COLO.LCivR 7.1.A

Pursuant to District of Colorado Local Rule 7.1.A, GCC's undersigned counsel hereby certifies that it has conferred with Jared Pettinato of The Pettinato Firm, counsel for Plaintiffs, and Mr. Pettinato stated that Plaintiffs "do not oppose GCC Energy, LLC's request for limited intervention to argue on the topics of redressability and remedy."  While GCC does not foresee addressing the Plaintiffs' constitutional claims, as those are being addressed by the Federal Defendants, GCC does seek intervention as a Defendant in this action with all the rights afforded the other Defendants' in this case, and in particular, the right to file the attached Motion to Dismiss, respond to dispositive motions filed by the other parties to this action, defend against any injunctive relief requested by the Plaintiffs, participate in court proceedings, and otherwise defend its legal interest in the 2017 Mine Modification approval that Plaintiffs seek to overturn.

Counsel further certifies that it conferred with Stephen Pezzi, Trial Attorney, U.S. Department of Justice, counsel for the Federal Defendants, and he stated that Federal Defendants oppose the relief sought in this Motion.

Dated this 10th day of March, 2021.

                Respectfully submitted,

                DEVOE LAW, LLC


                By: /s/ Adam T. DeVoe
                    Adam T. DeVoe, # 32059
                    Michelle C. DeVoe, # 35223
                    3900 E. Mexico Street, Suite 300
                    Denver, CO 80210
                    303-550-9517 (A. DeVoe)
                    720-839-1972 (M. DeVoe)
                    adam@devoe-law.com
                    michelle@devoe-law.com

                    *Attorneys for Proposed Defendant-Intervenor GCC Energy, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on this 10th day of March, 2021 I electronically filed the foregoing **DEFENDANT-INTERVENOR GCC ENERGY, LLC'S MOTION TO INTERVENE** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following email addresses:

| | |
|---|---|
| Jared S. Pettinato, Esq.<br>The Pettinato Firm<br>3416 13th St. N.W., #1<br>Washington, DC 20010<br>Jared@JaredPettinato.com<br><br>*Attorney for Plaintiffs* | BRYAN M. BOYTON<br>Acting Assistant Attorney General<br><br>ERICK WOMACK<br>Assistant Branch Director<br>Federal Programs Director<br><br>CHRISTOPHER R. HEALY<br>STEPHEN M. PEZZI<br>U.S. Department of Justice<br>Civil Division, Federal Programs Branch<br>1100 L St., N.W.<br>Washington, D.C. 20530<br>Christopher.Healy@usdoj.gov<br>stephen.pezzi@usdoj.gov<br><br>*Counsel for Defendants* |

                 */s/Adam T. DeVoe*